UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZOND, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO. 1:13-cv-11570-RGS |

**PLAINTIFF ZOND, INC.'S MOTION TO COMPEL SUPPLEMENTAL INITIAL DISCLOSURES FROM DEFENDANT INTEL CORPORATION**

Plaintiff Zond, Inc. ("Zond") moves this Court to compel Defendant Intel Corporation ("Intel") to supplement its initial disclosures served on October 24, 2013.

Intel's initial disclosures are grossly deficient because they do not name a single Intel witness. Given that Intel obtained a long extension to investigate the facts and witnesses implicated by Zond's claims, Intel's withholding of this basic information appears to be purely strategic and not due to lack of information. As such, Intel's failure to disclose the names of Intel employees with knowledge of such critical issues as the development, manufacturing, marketing and sales of the accused devices, including in particular the magnetron sputtering processes used in the manufacturing of Intel's accused products, prejudices Zond's ability to pursue discovery in this case. Accordingly, Zond requests that the Court compel Intel to promptly provide Zond with a list of people with knowledge as required by the Federal Rules, naming, among others, the Intel employees who have knowledge of the development, manufacturing, marketing and sales of the accused devices.

1

**I.     BACKGROUND**

On July 2, 2013, Zond sued Intel for patent infringement. Dkt. No. 1. This case relates to the use of particular processes for manufacturing certain Intel chips, in particular the "generation, use and/or applications of a unique plasma discharge technology that employs a strongly ionized plasma." Second Amended Complaint, Dkt. No. 14, at ¶ 13. Zond alleges that these processes used to make the accused Intel chips infringe seven Zond patents. *Id.* Both the original Complaint and the Second Amended Complaint describe Intel's accused products in considerable detail, providing background on the claimed processes, and specifically defining the accused chips as follows:

> The accused chips include those made using process steps that employ strongly ionized plasmas including but not limited to processes for depositing copper interconnects and contacts, as described in paragraph 16 of this Complaint, and metal for transistors, as described in paragraph 17 of this Complaint, as well as other methods of generating and using strongly ionized plasmas to form 32 and 22 nm and smaller chips. The accused chips include, but are not limited to, Intel's 32 and 22 nm Sandy Bridge, Ivy Bridge, Haswell, Arrandale, Clarkdale, Gulftown, Westmere processor families, including but not limited to Core i7, i5, i3, Xeon, Pentium, and Celeron, as well as processors for desktops, laptops, and embedded systems, 5 Series chipsets, and Centrino Wi-Fi and WiMax adapters manufactured using Intel's 32 and 22 nm and smaller fabrication processes (collectively, the "Infringing Products").

Dkt. No. 14 at ¶ 21; *see also* Dkt. No. 1 at ¶ 22. Paragraphs 13-20 and 22-29 of the Second Amended Complaint provide further background and allegations regarding the accused technology, processes, and chips. Dkt. No. 14.

After being served with the original complaint, Intel reached out to Zond to request a 45-day extension, presumably to allow Intel extra time to investigate the facts and witnesses implicated by Zond's allegations. Maskel Decl., Ex. 1. Zond agreed to the extension. *Id.*

Zond provided further explanation of its infringement allegations during discussions with Intel's counsel. On August 14, 2013, Intel wrote to Zond, stating that Zond's complaint failed

"to identify with any specificity the equipment or processes that Intel uses and that Zond claims are infringing." Maskel Decl., Ex. 2. In response, Zond wrote to Intel on August 19, 2013, identifying paragraphs 17-22 of the original Complaint and explaining, for example, that "paragraph 17 identifies the processes of generating and using high-density plasmas to manufacture barriers and seed layers for copper-based interconnects used in 32 and 22 nm (nanometers) chips." Maskel Decl., Ex. 3, at 1. Zond similarly explained that similar statements were in paragraphs 18 and 22 in the original Complaint. *Id.* Intel responded, stating:

> We understand from your letter that the accused equipment and processes—and, hence, the documents Intel should be preserving—relate to "magnetron sputtering" using "high-density plasmas" from metal deposition at 32nm and smaller nodes. Setting aside that you do not define "high density plasma," this is consistent with our earlier understanding as stated in my August 19, 2013, (sic) letter, and I see no further issues here.

Maskel Decl., Ex. 4.

On October 24, 2013, Intel served its initial disclosures on Zond without naming a single Intel witness. Maskel Decl., Ex. 5. Instead, Intel designated unnamed employees as follows:

> 1. One or more engineers at Intel knowledgeable about the accused equipment and processes, once the accused equipment and processes are identified by Zond.
>
> 2. One or more witnesses at Intel with knowledge regarding the sales, revenue, and marketing related to the accused products.
>
> 3. One or more witnesses at Intel with knowledge of Intel's business, including how it relates to the accused equipment and processes, once the accused equipment and processes are identified by Zond.

*Id.* at 2-3. Intel similarly included generic categories of witnesses for prior art and the manufacturers of accused tools and power supplies without naming any individuals for those topics. *Id.* at 4.

On October 25, 2013, Zond wrote to Intel to notify it that its initial disclosures were deficient. Maskel Decl., Ex. 6. On the same day, Intel wrote back, stating, "We disagree that

3

our disclosures are deficient" and asking for a draft of Zond's footnote regarding this issue that would be included in the Rule 26(f) Report.  Maskel Decl., Ex. 7.  In the Joint Rule 26(f) Report submitted on October 25, 2013, Zond objected to Intel's initial disclosures, noting that Intel had not disclosed any Intel employees by name despite (1) the nearly four-month pendency of the case, (2) clear descriptions in the complaint of what products and processes are accused of infringement, and (3) further correspondence from Zond regarding the accused processes and products.  Dkt. No. 20 at 4 n.3.  Intel disagreed with that characterization, stated that it had not received clear descriptions of the products and processes at issue, and claimed that it did not have enough information to match Zond's allegations to any particular machine that Intel uses.  *Id.* at 8 n.5.

Between July 1, 2013 and July 9, 2013, Zond filed suits in this district against six other groups of defendants.[1]  Although the accused products of the defendant groups are all different, Zond alleges infringement of the same seven patents against the defendants making and selling semiconductor devices.[2]  The complaints in those other cases also provide similar level of detail as to the accused products and processes.  *Compare* Hynix Amended Complaint, No. 13-cv-11591-RGS, Dkt. No. 11 at ¶¶ 19, 20, 24 *with* Dkt. No. 14 at ¶ 16, 17, 21.  Zond has received initial disclosures from other defendants in those cases with much more detail.  For example, in the *Hynix* case, which is also before this Court, Hynix identified 16 party witnesses and 2 non-party witnesses by name, with descriptions of why they would be likely to have discoverable

---

[1] *Zond, Inc. v. SK Hynix Inc., et al.*, C.A. No. 13-cv-11591-RGS*; Zond, Inc. v. Advanced Micro Devices, Inc*., C.A. No. 13-cv-11577-DPW; *Zond, Inc. v. Fujitsu Limited et al*., C.A. No. 13-cv-11634-WGY; *Zond, Inc. v. The Gillette Company et al*., C.A. No. 13-cv-11567-DJC; *Zond, Inc. v. Renesas Elecs. Corp*., et al., C.A. No. 13-cv-11625-NMG; and *Zond, Inc. v. Toshiba Corporation et al*., C.A. No. 13-cv-11581-DJC.

[2] Zond also alleges infringement of those patents and three additional patents against Gillette/Procter & Gamble for making and selling certain razor blades using the patented technology.

information.  Maskel Decl., Ex. 8, at 2-3.  Similarly, Advanced Micro Devices – Intel's direct competitor – identified five party witnesses.  Maskel Decl., Ex. 9, at 2.  Every defendant besides Intel that has served initial disclosures has named party witnesses.  Maskel Decl. Exs. 8-9.

II. **THE COURT SHOULD COMPEL INTEL TO SUPPLEMENT ITS INITIAL DISCLOSURES TO IDENTIFY BY NAME WITNESSES LIKELY TO HAVE DISCOVERABLE INFORMATION**

Intel's initial disclosures are severely deficient and must be supplemented.  "The obvious purpose of the disclosure requirement of Rule 26(a)(1)(A), Fed. R. Civ. P., is to give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation, either for purposes of serving a proposed amended complaint . . . or for being interviewed or for being deposed or for doing background investigation."  *Biltrite Corp. v. World Rd. Markings*, 202 F.R.D. 359, 362 (D. Mass. 2001).  As the committee that drafted the amendment that added the initial disclosure requirement stated, "Subparagraph (A) requires identification of <u>all persons</u> who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties."  Notes of Advisory Cmte. on 1993 Amendments (emphasis added).  At a minimum, initial disclosures should make some attempt to go beyond general categories of witnesses that might testify for the party.  *Sender v. Mann*, 225 F.R.D. 645, 651 (D. Colo. 2004) (failure to identify any witnesses in a case beyond general categories where there are a limit on the number of depositions allowed violated Rule 26, did not "advance[] the 'just, speedy, and inexpensive determination' of the action, and merited sanctions").

Here, Intel has simply chosen to ignore the requirements of Rule 26(a).  After **four months** of investigation, it has not identified **a single party witness**.[3]  Moreover, a sophisticated

---

[3] The fact that Intel has a motion to dismiss pending is irrelevant to this motion, as the requirements of Rule 26 still apply.  *In re Lotus Dev. Corp. Sec. Litig.*, 875 F. Supp. 48, 51

5

patent litigant like Intel, with experienced outside counsel, has surely investigated its magnetron sputtering processes using high density plasmas and had discussions with knowledgeable engineers and business executives at Intel regarding the case with an eye to determining which witnesses it will want to testify at trial, which witnesses know the most about the accused technologies and business impacts, and which witnesses might possess discoverable information. In fact, Intel has already had to respond to 10 interrogatories, which it plainly could not do without discussions with knowledgeable witnesses.[4] It seems plain that Intel's strategy at this stage is simply designed to frustrate discovery and not allow Zond to pursue its case.

The Court should reject Intel's argument that it simply does not know which processes Zond accuses of infringement and it cannot answer truthfully until it receives more information from Zond. Zond has provided detailed information of the types of processes that it accuses of infringement and provided further explanations of the results of those processes:

- "processes for depositing copper interconnects and contacts" (Dkt. No. 14 at ¶ 21) is further described as "a copper interconnect process with exceptional step coverage and seed layer integrity at lower cost per wafer than alternative technologies. The process provides a way to deposit effective barrier and seed layers for the critical interconnects used in chips manufactured using 32 and 22 nm semiconductor process technology. For example, the manufacturing process for such barrier and seed layers require a way to generate a high-density plasma in order to increase the ionization rate of the sputtered materials such as tantalum, titanium and copper (and alloys) for use in high-aspect ratio deposition processes." *Id.* at ¶ 16.

---

(S.D.N.Y. 1995) (rejecting the defendant's argument that because there was a motion to dismiss pending for a securities fraud claim, the responsibility to provide initial disclosures should be stayed).

[4] While Intel did not identify any witnesses in its responses to those interrogatories, refused to answer some interrogatories altogether, and provided seriously deficient responses to the others, it did provide minimal substantive responses on some issues, *e.g.*, when Intel first learned of the Zond patents, when it began selling microprocessors produced with a 32nm process, the circumstances of its work with third parties to develop its manufacturing processes, which patents Intel owns that concern magnetron sputtering, general statements regarding who its customers are, and who its competitors are in the relevant markets.

- "processes for depositing…metal for transistors" (*Id.* at ¶ 21) is further explained in the complaint: "Over the past few years, as transistor devices have scaled down, higher aspect ratios have made it more difficult for conventional plasma technology to fill narrow and deep structures while avoiding plasma damage. Zond's patented technology has provided unique strongly ionized plasmas that enabled such narrow and deep structures to be filled with the necessary metals in a cost-effective manner. For example, Zond's patented technology allows consistent layers of metal such as NiPt (and other alloys) to be formed at the bottom of the narrow and deep contact holes necessary for chips manufactured using 32 and 22 nm process technology." *Id.* at ¶ 17.

These statements (and others in the Second Amended Complaint) provide Intel with adequate notice of which processes and chips are the subject of this lawsuit. Moreover, Intel received additional information from Zond through correspondence between counsel. *See supra* Section I. Indeed, Intel conceded in a letter to Zond that it has at least some understanding of the "accused equipment and processes." *See supra* Section I.

Other defendants in the Zond cases have had no trouble understanding what processes and equipment are implicated in these actions. Indeed, Hynix and Advanced Micro Devices have been able to identify relevant witnesses in their initial disclosures based on similar complaints. *See supra* Section I. In fact, Hynix has already begun production of documents regarding the specific equipment and processes at issue in this litigation.

Furthermore, even if Intel's arguments regarding Zond's allegations of infringement were true (they are not), it still does not explain why Intel failed to identify a single financial, sales, or marketing witness in its initial disclosures. That deficiency should be remedied as well.

Intel's failure to provide proper initial disclosures is consistent with Intel's other steps in this case directed at delaying or suspending discovery. As mentioned above, Intel's recently served responses to Zond's interrogatories essentially "punt" on almost all of the substantive issues, in some cases with a blunt refusal to answer (save an offer to meet and confer). Intel also argued in the Rule 26(f) report for a suspension of discovery pending service of Zond's

7

infringement contentions.  Finally, Intel is currently resisting Zond's attempts to propose to the Court a protective order, which is *identical* to the order the Court already entered in the Hynix case.[5]  Intel's apparent strategy of delaying and impairing Zond's ability to take discovery should not be condoned.  The Court should grant the present motion and instruct Intel to abandon its other attempts to interfere with Zond's right to discovery.

## III.  CONCLUSION

For the foregoing reasons, Zond requests that the Court compel Intel to supplement its disclosures with specific names and information, as required under the Federal Rules.

Dated:  November 29, 2013                          Respectfully submitted,

ZOND, INC.

By its counsel,

/s/ *Tigran Vardanian*
David S. Godkin (BBO#196530)
Andrew A. Caffrey III (BB0#660481)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210
617-307-6100
godkin@birnbaumgodkin.com
caffrey@birnbaumgodkin.com

David C. Radulescu, Ph.D.
Tigran Vardanian
Etai Lahav
Gregory S. Maskel
Daniel Kesack
RADULESCU LLP
136 Madison Ave, 6th Floor
New York, NY 10016
646-502-5950

---

[5] The parties in the *Hynix* case recently submitted to the Court a modified protective order, which reflects proposed changes of a third-party, Applied Materials, Inc., that supplies both Hynix *and* Intel with the magnetron sputtering equipment used in the processes implicated in this case.  *See* Case No. 13-cv-11591-RGS, Dkt. Nos. 33, 33-1.

> david@radulescullp.com
> tigran@radulescullp.com
> etai@radulescullp.com
> greg@radulescullp.com
> daniel@radulescullp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

> /s/ *Tigran Vardanian*
> Tigran Vardanian